**IN THE UNITED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

JANE DOE and
JOHN DOE, individually
and as parents and next friends of ;BABY
DOE, a minor

c/o Schochor Staton, Goldberg and Cardea
1211 St. Paul Street
Baltimore, MD 21202

      *Plaintiffs,*

v.

PREVENTION GENETICS LLC
3800 South Business Park Ave.
Marshfield, WI 54449
      Serve on: Resident Agent
      Corporation Service Company
      33 E. Main Street, Suite 610
      Madison, WI 53703-4655

LUKE JOSEPH DRURY, Ph.D.
1311 N. Lincoln Avenue
Marshfield, WI 54449

CHUN-AN CHEN, Ph.D.
301 Larch Ave.
Marshfield, WI 54449

      *Defendants.*

Case No. 3:26-CV-00259-JDP

**AMENDED COMPLAINT AND JURY DEMAND**

Plaintiffs, Jane and John Doe, individually and as parents and next friends of Baby Doe,[1] a minor, by and through undersigned counsel, file this Complaint

---

[1] Plaintiffs are proceeding under pseudonym in accordance with the Court's order dated April 7, 2026. *See* ECF 9.

against Defendants Prevention Genetics LLC, Luke Joseph Drury, Ph.D., and Chun-An Chen, Ph.D. ("Defendants"), and state:

**PARTIES**

1. Plaintiffs ███████████ Jane Doe and ███████████ John Doe are adult residents of Union County, New Jersey. They are the natural parents of ███ Baby Doe, a minor. At all times alleged herein, Plaintiffs were domiciled in New Jersey.

2. Defendant Prevention Genetics LLC ("PG") is a limited liability company formed under the laws of Wisconsin, with its principal office located at 3800 South Business Park Avenue, Marshfield, Wisconsin 544949 (Wood County, Wisconsin). Defendant is a genetic testing laboratory in the business of providing prenatal and postnatal genetic testing services to the public.

3. Defendant PG is a wholly owned subsidiary of Exact Sciences Corporation, a Delaware corporation with its principal place of business located at 5505 Endeavor Lane, Madison, WI 53719. Exact Sciences Corporation is a wholly owned subsidiary of Abbott Laboratories, an Illinois corporation with its principal place of business located at 100 Abbott Park Road, Abbott Park, Illinois 60064.

3.4. Defendant Luke Joseph Drury, Ph.D., is an adult resident of Wood County, Wisconsin. At all times relevant hereto, Defendant Drury was the agent, employee and servant of Defendant PG. Specifically, Defendant Drury was employed by Defendant PG as a Clinical Laboratory Director, and his conduct as alleged occurred within the scope of his employment.

5. According to publicly available information, Defendant Drury has resided in Wood County, Wisconsin since at least 2017, and is now employed by Mira Precision Health, Inc., a

Delaware corporation with its principal place of business in Mason, Ohio.  Accordingly, upon information and belief, Defendant Drury is domiciled in either Wisconsin or Ohio.

4.6.    Defendant Chun-An Chen, Ph.D., is an adult resident of Wood County, Wisconsin. At all times relevant hereto, Defendant Chen was the agent, employee and servant of Defendant PG.  Specifically, Defendant Chen was employed by Defendant PG as a Laboratory Director, and his conduct as alleged herein occurred within the scope of his employment.

7.    According to publicly available information, Defendant Chen has resided in Wood County, Wisconsin since at least 2020 and remains employed by Defendant PG, whose principal place of business is located in Wood County.  Accordingly, upon information and belief, Defendant Chen is domiciled in Wisconsin.

## JURISDICTION AND VENUE

5.8.    This Court has general jurisdiction over Defendants because Defendant PG is a business formed under the laws of Wisconsin and its principal place of business is located in Wisconsin, and Defendants Drury and Chen are adult residents of Wisconsin.

6.9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States.

7.10.    Venue of this proceeding is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of Wisconsin.

## FACTS COMMON TO ALL COUNTS

3

8.11.   In or about January 2022, the ▮▮▮▮ Does' then-only child, ▮▮ ,Toddler Doe, a male born in 2020, was diagnosed with KBG syndrome, a genetic disorder characterized by intellectual disability and developmental delay.  ▮▮ Toddler Doe's presentation leading to his genetic diagnosis included unilateral lower extremity polydactyly (an extra toe on one of their son's feet).

9.12.   At the time of ▮▮ Toddler Doe's diagnosis, Ms. ▮▮ Doe was in her first trimester with the couple's second child, a male fetus.

10.13.  On April 8, 2022, Ms. ▮▮ Doe presented to Penn Medicine Princeton Health for a 20-week ultrasound.  The ultrasound was positive for bilateral lower extremity polydactyly (an extra toe on each foot).

11.14.  On April 18, 2022, fetal echocardiography was performed which revealed that the fetus had a congenital heart defect, namely, two ventricular septal defects ("VSD").

12.15.  Given ▮▮ Toddler Doe's polydactyly and subsequent genetic disorder diagnosis, and considering the bilateral polydactyly and VSD found with the fetus, the ▮▮ Does were extremely concerned the fetus had a debilitating genetic disorder.  Accordingly, the ▮▮ Does elected to obtain whole exome sequencing ("WES") on an urgent basis for the purpose of making an informed decision on whether to continue the pregnancy.

13.16.  Defendant Prevention Genetics is a genetics laboratory based in Wisconsin. Defendant PG's stated mission is to "deliver clinical genetic testing of the highest quality at fair prices with exemplary service to people around the world."

14.17.  In 2022, Defendant PG represented that its PGxome Prenatal Whole Exome Sequencing was capable of assessing almost all genes from the human genome, and was ideal for pregnancies at-risk for a genetic condition with an urgent need for genetic diagnosis.

15.18.  Defendant PG represented that it could provide results of the WES in two to three weeks.

16.19.  Defendant PG represented that it would report variants in genes known to be associated with a phenotype, or possibly associated with a phenotype, and promised to report pathogenic, likely pathogenic and uncertain variants related to the clinical indications for the genetic testing.

17.20.  A customer could also "opt in" for reporting on "childhood onset disorders." If a customer opted in, Defendant PG promised to also report pathogenic and likely pathogenic variants detected in genes unrelated to the fetal clinical features but known to cause moderate to severe childhood onset disorders, including nonsyndromic intellectual disability / neurodevelopmental disorders that are not detectable with fetal imaging.

18.21.  On April 18, 2022, the ███████ Does elected to proceed with WES through Defendant PG and opted in for reporting on childhood onset disorders. They directly contracted with Defendant PG to obtain the testing and paid for the testing out of their own pocket.

19.22.  By agreeing to undertake WES for the ███████ Does and their fetus, Defendants owed Plaintiffs a duty to perform the testing and provide reporting in accordance with accepted standards of a good and reasonable genetics laboratory.

20.23.  On April 18, 2022, Ms. ███████ Doe underwent an amniocentesis for the purpose of providing Defendant PG a genetic sample from the fetus.  The ███████ Does also submitted their respective blood samples so that Defendant PG could analyze DNA from the parents as well as the fetus (i.e. a "trio analysis").

21.24.  The requisition form completed and submitted to Defendant PG to order the testing identified dysmorphic features and multiple congenital anomalies as the primary indications for

5

testing and specifically noted that the fetus had postaxial polydactyly and VSD.  The requisition form further noted that the ████████ Does opted in for reporting on childhood onset disorders, and that the test was being ordered on a stat basis.

22.25.  Defendant PG received the samples on April 19, 2022.

23.26.  The test results were set forth in a report dated May 2, 2022 signed by Defendant Drury and Defendant Chen (the "2022 Report").

24.27.  In the 2022 Report, Defendants failed to note that VSD was one of the indications for testing, despite VSD being clearly identified on the requisition form as one of the fetus's multiple congenital anomalies.  Instead, in breach of the standards of care, Defendants negligently stated that the only indication for testing was postaxial polydactyly.  Defendants negligently failed to also note VSD that was reported to them.

25.28.  In the 2022 Report, Defendants disclosed no reportable genetic variants known to be associated with – or possibly associated with – postaxial polydactyly, the only clinical indication for testing listed in the 2022 Report.  As noted above, Defendants negligently omitted VSD as another clinical indication for testing.  The 2022 Report also identified no likely pathogenic genetic variants in the fetus associated with childhood onset disorders.  In other words, the 2022 Report was negative for any genetic disorders.

26.29.  At that time, Defendants knew or, by the exercise of ordinary diligence, should have known that the fetus was hemizygous for c.403C>T, p.Arg135Trp ("the Variant").  Defendants, however, negligently failed to disclose the Variant and its association with the fetus's clinical indications for testing in the 2022 Report.

27.30.  A 2020 publication by Viviana Cordeddu *et al.* in *Clinical Genetics* – an internationally recognized journal of medical genetics – titled "Refinement of the clinical and

mutational spectrum of UBE2A deficiency syndrome" identified two males with UBE2A syndrome that were hemizygous for the Variant (one of whom also had foot and digit anomalies). UBE2A is an X-linked (i.e. maternally inherited) genetic disorder known to cause developmental, intellectual and other disabilities in males.

28.31.  Defendants knew or, by the exercise of ordinary diligence, should have known that males hemizygous for a UBE2A mutation will present with symptoms of the disease.

29.32.  Cordeddu (2020) further concluded that variants in UBE2A are "causative" of VSD, one of the clinical indications for WES testing of the ████████ Does' fetus.  The authors further noted that "small VSD … commonly occur and represent the primary life-threatening complication of [UBE2A]."

30.33.  In sum, in 2022, Defendants knew, or by the exercise of ordinary diligence, should have known that:

    a.  The ████████ Does' male fetus was hemizygous for the Variant inherited from his mother;

    b.  The Variant was linked to UBE2A, a neurodevelopmental genetic disorder;

    c.  Males with UBE2A express UBE2A symptoms;

    d.  VSD was one of the clinical indications for WES testing of the fetus; and

    e.  UBE2A causes VSD.

31.34.  Accordingly, the standards of care required Defendants to ensure the Variant was reported to the ████████ Does.  Indeed, Defendant PG promised to report variants – pathogenic, likely pathogenic or uncertain variants – known to be associated, or possibly associated, with the clinical indications for testing, including VSD.  The standards of care required Defendants to

7

recognize that the Variant qualified as such and further required that Defendants disclose the Variant in the 2022 Report.

32.35.  In breach of the standards of care, Defendants negligently failed to report the Variant and instead falsely informed the ▮▮▮▮ Does that no genetic disorder was identified in the fetus.

33.36.  As a direct and proximate result of Defendants' breach of the standards of care, the ▮▮▮▮ Does were not made aware of the fetus's true genetic condition and therefore were deprived of the opportunity to make an informed decision on whether to continue the pregnancy.

34.37.  In reliance on the negligent false negative report, the ▮▮▮▮ Does elected to continue the pregnancy.

35.38.  But for Defendants' negligent failure to disclose the Variant, the ▮▮▮▮ Does would have terminated the pregnancy.

36.39.  On in the late summer of 2022, Ms. ▮▮▮▮ Doe gave birth to ▮▮ Baby Doe in New Jersey.

37.40.  After ▮▮ Baby Doe began expressing global developmental delays, on April 26, 2025, the ▮▮▮▮ Does requested that Defendant PG perform a WES reanalysis of the previously submitted genetic samples.

38.41.  On June 17, 2025, Defendant PG transmitted its final WES reanalysis report (the "2025 Report").  The 2025 Report – which finally identified VSD as a clinical indication for testing – disclosed for the first time that ▮▮ Baby Doe was hemizygous for the Variant.  As indicated above, Defendants were required, in conformity of the standard of care, Defendants were required to report that the fetus was hemizygous for the Variant in 2022.

39.42. In the 2025 Report, citing the Cordeddu (2020), Defendant PG advised that the Variant was likely pathogenic for UBE2A and known to be associated with ██'sBaby Doe's clinical conditions.

## COUNT I – WRONGFUL BIRTH

40.43. Plaintiffs ██████ Jane and ██████ John Doe incorporate the preceding as if fully set forth herein.

41.44. Plaintiffs are the natural parents of ██ Baby Doe.

42.45. As a direct and proximate result of the negligence of Defendants, Plaintiffs have suffered severe emotional distress caused by Defendants' negligence. Plaintiffs have suffered, and will continue to suffer, severe and permanent psychological and emotional injuries, together with personal anxiety, stress, pain, suffering and anguish, from raising a child with a debilitating genetic disorder.

43.46. Plaintiffs have further suffered – and will continue to suffer – massive economic costs associated with raising ██ Baby Doe, including but not limited to the extraordinary economic costs associated with ██ Baby Doe's brain damage, neurological dysfunction, developmental delays and other disabilities.

WHEREFORE, Plaintiffs ██████ Jane and ██████ John Doe demand judgment against Defendants, individually, jointly, severally and/or in the alternative for compensatory damages, interest thereon, costs of suit and such other and further relief as the Court deems equitable and just.

## COUNT II – WRONGFUL LIFE

44.47. Plaintiffs ██████ Jane and ██████ John Doe, as parents and next friends of ██ Baby Doe, a minor, incorporate the preceding paragraphs as if fully set forth herein.

9

45.48.  ██Baby Doe was born to his natural mother, ████████████Jane Doe, in the late summer of 2022 in New Jersey.

46.49.  As a direct and proximate result of the negligence of Defendants, ██Baby Doe was born with severe and permanent brain injury, neurological dysfunction, neurodevelopment dysfunction and other disabilities.  He has been and will continue to be deprived of any ability to engage in a normal life or of any of life's pleasures and/or activities.  He has and will continue in the future to sustain severe and permanent physical, psychological and emotional injuries, together with personal anxiety, stress, pain, suffering and anguish; and has incurred, and will in the future incur, substantial costs and expenses in an effort to cure and treat himself.

WHEREFORE, Plaintiff ██,Baby Doe, a minor, by and through his parents and next friends, ██████Jane and ████████████John Doe, demand judgment against Defendants, individually, jointly, severally and/or in the alternative for compensatory damages, interest thereon, costs of suit and such other and further relief as the Court deems equitable and just.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiffs demand that the issues herein be tried by a jury.

Dated: April 10, 2026

Respectfully Submitted,

**SCHOCHOR, STATON, GOLDBERG AND CARDEA, P.A.**

/s/ ~~Jonathan Schochor~~Joshua F. Kahn

Jonathan Schochor, Esq~~., admission pending~~. (I.D. No. 7406010179)
Joshua F. Kahn, Esq~~., admission pending~~. (I.D. No. 1012150095)
1211 St. Paul Street
Baltimore, MD 21202
T: 410-234-1000

**END, HIERSEMAN & CRAIN, L.L.C.**

/s/ Jerome A. Hierseman

Jerome A. Hierseman, Esq. (I.D. No. 1005140)
731 N. Jackson Street, Suite 600
Milwaukee, WI 53202
414-278-8060
jhierseman@EHCLAW.com

F: 410-234-1010
jschochor@sfspa.com
~~jkahn@sfspa.com~~jkahn@sfspa.com

*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing was filed via the Court's

electronic filing system and is available for downloading.

Dated: April 10, 2026                          /s/ *Joshua F. Kahn*
                                               Joshua F. Kahn, Esq. (I.D. No. 1012150095)
                                               1211 St. Paul Street
                                               Baltimore, MD 21202
                                               T: 410-234-1000
                                               F: 410-234-1010
                                               jschochor@sfspa.com
                                               jkahn@sfspa.com

11